U.S. DISTRICT COURT
DISTRICT OF NH
2019 JUN 11 AM 11: 13

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Samson Papay, PAYE }
Alien No. 094-748-831 }
}
       Petitioner, } CIV. NO_____
}
    V. } PETITION FOR WRIT OF HABEAS
} CORPUS PURSUANT TO 18 U.S.C.
} 2241, NY A PERSON SUBJECT TO
MARCOS D. CHARLES, Acting field } INDIFINITE IMMIGRATION
office director, immigration and customs ] DETENTION
Enforcement, Enforcement and Removal }
Operations; }
]
CHRISTOPHER BRACKETT, }
Superintendent of Strafford County ]
Department of Corrections, ]
]
}
       Respondent }

## PRELIMINARY STATEMENT

1.    Petitioner, Samson Paye, hereby petitions this Honorable Court for a writ of Habeas corpus to remedy Petitioner's unlawful detention, and to enjoin Petitioner's continued unlawful detention by the Respondent. In support of this petition and complaint for injunction relief, Petitioner alleges as follows:

## PARTIES

2.    Petitioner is presently detained at direction of Respondents at Strafford County Department of Corrections ("SCDC"). Petitioner's is a _native and citizen of Liberia_. Petitioner was taken into custody on October 15, 2018. And received a final order of removal from the United States back on July 18, 2012. Petitioner is currently detained at the Strafford County Department of Corrections (266

County Farm Road, Dover, NH) Petitioner has been continuously detained by the Bureau of Immigration and Customs Enforcement (ICE) for over 180 Days

3. Respondent Marcos D. Charles is the Acting Field office Director of Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations, of Boston Field Office, which maintains authority over immigration detention in New Hampshire. He is sued in his official capacity.

4. Respondent Christopher Brackett is the superintendent of SCDC and is petitioner's immediate custodian. He is sued in his official capacity. Respondent is responsible for the operations of SCDC at which petitioner is detained he is sued in his official capacity.

## JURISDICTION

5. Petitioner is detained in the custody of Respondent at 266 County Farm Road, Dover, New Hampshire 03820

6. This Court has subject matter jurisdiction under 28 U.S.C. & 2241 ( Habeas Corpus), Art. 1 & 9, cl. 2 of the United States Constitution ("Suspension Clause"), and 28 U.S.C. & 1331, as the Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. See Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that & 2241 Habeas corpus proceedings

remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); INS v St. Cyr, 533 U.S. 289, 301 (2002) ("at its historical core, the writ of Habeas corpus has served as a means or reviewing the legality of executive detention, and it is in that context that its protections have been strongest."); Clark v. Martinez, 543 U.S. 371 (2005) (holding that Zadvydas applies to aliens found inadmissible as well as removable).

## VENUE

7.  Under 28 U.S.C.& 1391, venue properly lies in the District of New Hampshire because petitioner is physically present and in the custody of Respondents at 266 County Farm Road, Dover, New Hampshire 03820

## EXHAUSTION OF REMEDIES

8.  Petitioner has exhausted his administrative remedies to the extent required by the law, and his only remedy is by way of this judicial action. After the Supreme Court decision in Zadvydas, the Department of Justice issued regulations governing the custody of aliens ordered removed. See 8 C.F.R. &241.4. Petitioner received the final order of removal on July, 18, 2012. At his "90-days post-order custody review (POCR) on or about January 17-2019, I.C.E.'s decided to continue his detention. Subsequently, despite petitioner's submission of a 180-day POCR letter to DHS, Headquarters Post-Detention Unit ("HQPDU") informed Petitioner that it would continue to keep him in custody despite having been detained for six-months after a final order of removal. The custody review regulations do not provide for appeal from a HQPDU custody review decision.

See 8 C.F.R. &241.4(d).

9.   No statutory exhaustion requirements apply to Petitioner's claim of unlawful detention.

## STATEMENT OF FACTS

10.   Petitioner, Samson Paye, was born in Liberia on October 28, 1990. Petitioner was two (2) months old when war came into Liberia. Petitioner father was killed during the war; Petitioner and his mother Doris PAYE flee and cross the border to Guinea. In the years of 2000, petitioner was separated from his mother in Guinea at the ages of ten (10) years old because of the war. The petitioner learned to survive on his own in a third world country all by himself for five (5) whole years. The petitioner was fifteen (15) years old when he was found by a truck driver in Kacedougou Guinea, whom in turn gave him to the United Nation agency (UN). And the United Nation gave him to the International Resettlement Center (IRC). the IRC, find out that the petitioner mother was in the United States' And that the petitioner's mother had put the petitioner down as "missing child" with the United Nation before she came to the United States as a Refugee in 2004. Petitioner mother then filed for him to come to the United States and therefore was brought to the United States on March 07,2007 as a Refugee in Providence, Rhode Island at the age of sixteen(16). Petitioner lived with his mother Doris PAYE and his younger sister Patience Paye. Who lived in Providence, Rhode Island? The petitioner mother and sister are U.S. Citizens.

11.     on June 22 2012. ICE charged Samson Paye, <u>with being inadmissible under Sections 237 (a) (2) (A) (iii) and (a) (2) (B) (i) of the Immigration and Nationality Act (INA), as amended. In that, at any time after admission, you have been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. He was ordered removed to Liberia by the Immigration Judge (IJ) as an aggravated felon because he had a conviction of one (1) year or more.</u>

12.     <u>On April 2013, Petitioner was released under Supervision by INS and was sent back to live with his mother and sister in Providence, Rhode Island</u>

13.     on August 24, 2015. The Petitioner was charged with a Felony Assault which a felony. The petitioner served 4 years and Six months in Rhode Island Department of Correction. While the petitioner were in prison in Rhode Island DOC at Cranston. The petitioner participated in many rehabilitation programs. Such as **ANGER MANAGEMENT, AVATAR, PROVIDENCE CENTER ADDICTION TREATMENT AND RECOVERY SERVICE, DOMESTIC VIOLENCE, OCCUPATIONAL THERAPY TWICE 2017-2018, AND ADULT BASIC EDUCATION CLASS 2017-2018**, please see attach certificate.

14.     On October 15, 2018. ICE took petitioner into custody. Petitioner was taken into custody to await his deportation. Petitioner received a final removal order back in July 18, 2012. Since that time Petitioner has spend 9 month periods in ICE custody without being deported. The most recent, petitioner has been

continuously detained by Immigration and Customs Enforcement (ICE) for over __ months.

15. <u>ICE first reviewed Petitioner's detention status on or about January 13, 2019 pursuant to Post-Order Custody review procedures at 8 C.F.R. & 241.4. In a letter dated January 13, 2018, ICE denied Petitioner's request for release stating that he was **a danger to the community or a flight rick.**</u>

16. On about six months after petitioner's final order of removal, I submitted a 180-day POCR review.

17. ICE denied petitioner request to be release on an ankle monitor DHS stated that they are still working with the Liberian government to obtain travel documentation because Petitioner's deportation was "reasonably foreseeable." ICE did not specify how many individuals from Liberia, it had in fact repatriated, or whether it had contacted the government of Liberia with respect to Petitioner's case, or mention whether it had received any information from Liberia government regarding the status of Petitioner's travel documents. Nor did it give an indication of when it expected petitioner's travel documents to be issued. Indeed, it gave no information concerning the existence or status of efforts to deport Petitioner.

18. [22] Though under <u>Zadvydas</u>, Petitioner has the right to be free from

indefinite detention regardless of whether ICE considers him a danger to the community or a flight risk, petitioner contests Ice's determination of dangerousness and flight risk. [Petitioner has lived in Providence Rhode Island for 11 years since coming to this country and never left the country. The Petitioner plans to continue to support his family when released from ICE detention. Petitioner has numerous of job opportunities upon his return into the community. Petitioner will be living with his mother Doris PAYE who is 81 years old and when the Petitioner get release the Petitioner is planning to go get his GED and finish his Education at CCRI of Rhode Island. Also the Petitioner told his mother to fallout many jobs application for him so he could have a job waiting when he gets release from ICE detention. Petitioner will be staying with his mother Doris PAYE. The petitioner will not be a flight risk for these reasons or get into any kind of trouble.]

19. In the six (6) months that have passed since Petitioner's last custody review, ICE has not notified Petitioner of any progress in Petitioner's repatriation, instead an ICE officer say to him, "I have nothing for you yet".

20. To Petitioner's knowledge, the government of Liberia has not issued travel documents for him. Indeed, neither ICE nor Liberia has provided any indication that Liberia would accept Petitioner in the reasonably foreseeable future.

21. ICE has never asserted that Petitioner has failed to cooperate in his deportation, to the contrary, Petitioner on his own initiative, and through the help of his family, has tried to expedite his repatriation to Liberia and release from custody.

22. Since the Petitioner's incarceration in ICE, the petitioner has done all he can to cooperate with ICE in obtaining his travel documents. The Petitioner has tried to contact the Liberia Consulate in Washington, DC and was told documents were not issued nor will they be issued. Petitioner's mother also contacted the Liberia Consulate who also told her documents have not been issued to ICE.

23. For all the reasons stated within, Petitioner's removal is not reasonably foreseeable.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

24. In <u>Zadvydas v. Davis,</u> 533 U.S.678 (2001) the U.S. Supreme Court held that 8 U.S.C.& 1231(a)(6), when "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" 533 U.S. at 689. A "Habeas court must [first] ask whether the detention in question exceeds a period reasonably necessary to secure removal." <u>Id</u>. At 699. If the individual's removal " is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by the statute." <u>Id</u>. At 699-700. In Clark v. Martinez, 543 U.S. 371 (2005), the court held that Zadvydas applies to non-citizens found inadmissible as well as removable

25. In determining the length of a reasonable removal period, the Court adopted a "presumptive reasonable period of detention" of six months. <u>Id</u>. at 701. After six months, the government bears the burden of disproving an alien's "good reason

to believe that there is no significant likelihood of removal in the reasonably foreseeable future." See Zhou v. Farquharson, 2001 U.S. Dist. LEXIS 18239, *2-*3 (D. Mass. Oct. 19, 2001) (quoting and summarizing Zadvydas). Moreover, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701. Ice's administrative regulations also recognize that the HQPDU has a six month period for determining whether there is a significant likelihood of an alien's removal in the reasonably foreseeable future. See 8 C.F.R. & 241.4 (k)(2)(ii).

26. Evidence showing successful repatriation of other persons to the country at issue is not sufficient to meet the government's burden to establish that an alien petitioner will be deported within the reasonably foreseeable future. See Thompson v. INS, 2002 U.S. Dist. LEXIS 23936 (E.D. La. September 16, 2002) (government failed to show that alien's deportation to Guyana was reasonably foreseeable where the government offered historical statistics of repatriation to Guyana, but failed to show any response from Guyana on the application for travel documents that INS and the petitioner had requested). Rather, for the government to meet its burden of showing that an alien's repatriation is reasonably foreseeable, it must provide meaningful evidence particular to the individual petitioner's case.

27. An alien who has been detained beyond the presumptive six months should be released where the government is unable to present document confirmation that

the foreign government at issue will agree to accept the particular individual in question. See Agbada v. John Ashcroft, 2002 U.S. Dist. LEXIS 15797 (D. Mass. August 22, 2002) (court "will likely grant" Habeas petition after fourteen months if ICE "is unable to present document confirmation that the Nigerian government has agreed to [petitioner's] repatriation"); Zhou, 2001 U.S. Dist. LEXIS 18239 (ordering that the writ of Habeas corpus issue within 60 days, given petitioner's 13 month detention and the INS's inability to assure the court that the paperwork from China was on its way); Abdul v. Ashcroft, 2002 U.S. Dist. LEXIS 19050 at *7 (W.D. Wash. February 28, 2002) (government's failure to offer specific information regarding how or when it expected to obtain the necessary documentation or cooperation from the foreign government indicated that there was no significant likelihood of petitioner's removal in the reasonably foreseeable future).

## CLAIMS FOR RELIEF

## COUNT ONE

## STATUTORY VIOLATION

28. The forgoing allegations are re-alleges and incorporates herein.

29. Petitioner's continued detention by Respondents is unlawful and contravenes 8 U.S.C. & 1231 (a)(6) as in interpreted by U.S. Supreme Court in Zadvydas V. Davis, 533 U.S. 678 (2001). the six-months presumptively reasonable period for continued removal efforts has expired. Petitioner still has not been removed,

and for the reasons above, petitioner's removal to Liberia is not reasonably foreseeable. The Supreme Court held in <u>Zadvydas</u> that the continued detention of someone after six months where deportation is not reasonably foreseeable is unreasonable and in violation of 8 U.S.C. & 1231(a). 533 U.S. at 701

### COUNT TWO

### SUBSTANTIVE DUE PROCESS VIOLATION

30.     The forgoing allegations are re-alleges and incorporates herein.

31.     Petitioner's continued detention violates his right to substantive due process by depriving him of his core liberty interest to be free from bodily restraint. <u>See, e.g.,</u> **Tam v. INS**, 14 F. Supp. 2d 1184 (E.D. Cal 1998) (aliens retain substantive due process rights). The Due Process Clause requires that the deprivation of petitioner's liberty be narrowly tailored to serve a compelling government interest. <u>See</u> **Reno v. Flores,** 507 U.S. 292, 201-02 (1993). While the respondents would have a compelling government interest in detaining petitioner in order to effect his deportation, that interest does not exist if Petitioner cannot be deported. The Supreme Court in **Zadvydas** thus interpreted 8 U.S.C. & 1231(a) to allow continued detention only for a period reasonably necessary to secure the alien's removal because any other reading would go beyond the government's articulated interest – to effect the alien's removal. <u>See Kay v. Reno</u>, 94 F. Supp.2d 546, 551 (M.D. Pa. 2000)

(granting writ of Habeas corpus because petitioner's substantive due process rights were violated, and noting that "If deportation can never occur, the government's primary legitimate purpose in detention--executing removal—is nonsensical").

## COUNT THREE

## PROCEDURAL DUE PROCESS VIOLATION

32. The forgoing allegations are re-alleges and incorporates herein.

33. Under the Due Process Clause of the Fifth Amendment, a non-citizen is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. Petitioner, in this case has been denied that opportunity as there is no administrative mechanism in place for the Petitioner to demand a decision, ensure that a decision will ever be made, or appeal a custody that violates <u>Zadvydas</u> and Martinez. See generally 8 C.F.R. & 212.12.

## PRAYER FOR RELIEF

Wherefore, Petitioner prays that this Honorable Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Grant Petitioner a writ of Habeas corpus directing the Respondents to immediately release the Petitioner from custody, under reasonable conditions of supervision;

3. Order Respondents to refrain from transferring the Petitioner out of the

jurisdiction of the ICE Boston District Director during the pendency of these proceedings and while the Petitioner remains in Respondent's custody;

4. Grant any other and further relief which this Honorable Court deems just and proper.

I, Samson Paye, affirm under penalty of perjury, that the foregoing is true correct to the best of knowledge.

Respectfully submitted this 6 day of 6-19

_Samson Paye_ [signature]

Samson PAYE, Pro Se

Samson P. Paye
Strafford County DC
266 County Farm Road
Dover, NH 03820

## Certificate of Service

I, Samson, certify that a true copy of the above document together with attached documents, was served on 6-6-19, upon the following:

U.S. Attorney's Office
53 Pleasant Street, 4th Floor
Concord, NH 03301

By placing a copy of the above in the mail system at the facility at which I am detained.

_Samson_ Signature
Paye, samson P., Pro Se

10